Good morning, Your Honors. May it please the Court, Manuel Dionis. Please speak up. Manuel Dionis for the petitioner. I'd like to reserve two minutes for rebuttal. All right. And for everyone, there's a clock there. When it's yellow, you have two minutes left, including your rebuttal time. And when it's red, that means just what a stop sign means. Your Honors, the issues in this case arise from a 41-year-old Chinese national's claims to the one-child opposition to the one-child planning policy and with past persecution. The two issues that I would like this Court to address or take a look at is a lack of opportunity to examine the evidence, which is just not providing the petitioner with fundamental fairness and due process. The second is, if we move on beyond that, is that there is no substantial evidence to support the adverse credibility finding. Well, Counsel, let me ask a question. Given that this is a post-real ID case, why shouldn't we give difference to the adverse credibility finding when it's mostly, even though it is mostly based on trivial inconsistencies, we're supposed to defer, are we not? You are, and this is going to, and I was, if I could start with the reason why it shouldn't have even gotten to the point where it was considered these inconsistencies should have even been considered. Okay, well, you can go there second. Why don't you answer the question first? Yes, Your Honor. You may have run out of time. Yes, Your Honor. Well, even with the post-real ID, if we take a look at the lack of substantial evidence, and I'm going to go down the immigration judge's own decision, looking at CAR 67 regarding plausibility of Chinese officials, whether Chinese officials would or wouldn't allow in regards to an insertion of an IUD ring. I believe we have a case that says the IJ is not allowed to make assumptions or make her own, for her to even guess as to what these Chinese officials would or wouldn't do. The second is, if we take a look at the CIR 69, the assumption that both parties had to be present and examined to request a marriage certificate. Again, this is another assumption that the IJ shouldn't have made. She's making the assumption that both the parties had to have been there, but clearly this is not what the petitioner had stated. Well, can I ask a more fundamental question, and that is large parts of the adverse credibility finding are based on the fact that her application and testimony differed from that of her husband, correct? Yes, Your Honor. So would you enlighten us as to the timing? Because I thought he left in 2001, is that correct? He left China in 2001? Yes, Your Honor. And so when was his affidavit and testimony filed? When is it dated? That, I believe, was dated in 2001. It may have been filed not too long after his entry into the United States. And although I understand that his recollections of the events may have been a lot, according to the government, is a lot more accurate as opposed to the petitioner's, however, these events occur. That's my question. Why do we make that assumption at all? And I'm not. I'm just saying it seemed to me that the BIA was kind of assuming if he said X and she said Y, then she was not credible as opposed to thinking, well, one of them may be misremembering, but what is the basis to your understanding of why the BIA basically gives him the upper hand and whose testimony is correct? And my point today is that the petitioners, when she testified, she's testifying as to her account's accuracy. She's not saying that. Okay, I need to match up the facts of what happened with what he testified to. What she's saying is that these are my accounts of the event and this is what is accurate and this is what you should look at. And so the IJ, the immigration judge, made a mistake by trying to compare the petitioner's testimony with the husband's testimony. And, you know, you could take a look at one event. Two people could take a look at one event and describe it in completely different ways, and they could have both been there. They could have seen the accident and say, you know, this person was at fault, and the other person might say, no, the other car was at fault. Assuming that you're correct, does the case of matter of RKK help you at all? Yeah, no. I see that the government cited to this, and I don't think that this is applicable in this case. I understand that this is, you know, an inter-proceeding similarity. In this case, completely the petitioner is saying that, well, this is my account of the case. It may differ. It doesn't need to be similar. And I was hoping to move on because I was hoping to really impress this on the court because I wasn't able to address this in my brief that this shouldn't have even been, with regards to matter of RKK, is that pursuant to 8 U.S.C. 1229 A4B, the alien should have been given a reasonable opportunity to examine the evidence against the alien. And what I'm saying is that this transcript should not have even been considered before the petitioner had an opportunity to take a look at it. This is significant because if we take a look at 8 U.S.C. 1229 A4 as a whole, you'll notice that A is the right to have an attorney. C is the right to have the whole entire proceedings recorded and transcribed and preserved for appeal. If you take away A and C, even with, and I understand that the trial attorney in this case did not object to the husband's transcripts being introduced, and even regardless of that, it's not necessary to have to object or present some type to preserve this right of, you know, having to examine the evidence. That's just something that. I don't quite understand your point. Her lawyer maybe haplessly says, I don't have any objection to the husband's application here being submitted and being an exhibit. Right, but he was not given a reasonable opportunity to take a look at it. I believe there was a recess. If this court thinks that a recess, a brief recess, is a reasonable opportunity to preserve, to take a look, examine the evidence. Didn't he already have it? He just didn't have it with him in his briefcase? No, that was the application, and I'd like to point to that. Contrary to the government's assertion that the IJ had required him to provide the transcripts, there was a different attorney for the husband. He did not have the transcripts. What she, if you take a look at AR-190, the IJ specifically asked for the asylum application, not the transcripts. What makes this even worse is the government clearly had the transcripts ahead of time. They had this ahead of time, and what they did was they waited until the last trial day to present it to the court. And he had no reason why. A due process error? Yes, Your Honor. Well, this argument was not raised before the BIA. And I believe it was, Your Honor, in the prior attorney's brief in saying that he was not given an opportunity to review the evidence. Well, what would he, this is before the IJ. So what argument did you make to the BIA as to what you would have done if you had had the opportunity to look at that evidence? Well, he would have been able to at least, the husband was available, and the husband could have provided a declaration, could have been brought in as a witness, but the judge didn't afford him that opportunity to continue it, to address it. Did you argue that to the BIA? I'm sorry, I wasn't the attorney. I didn't. Right. I believe it was touched on in saying that he wasn't given the opportunity. So it was at the very least, the prior attorney at least preserved that argument. Do you want to reserve the remaining time? Yes, Your Honor. Thank you. May it please the Court. Rebecca Hoffberg Phillips on behalf of the United States Attorney General. This Court started to touch on the fact that there's a lot of exhaustion and waiver principles at issue in this case, and the Court should dismiss this case on that basis alone. The arguments that are being raised in terms of the due process arguments and the opportunity to review the transcripts in advance of that hearing were not only not raised to the IJ, as Petitioner's Counsel specifically agreed to admit them into evidence, they were not raised to the Board at all, as Petitioner's Counsel at that point only said, I just want to make clear for the record that the IJ asked me to turn in the husband's asylum application, no mention of the transcripts whatsoever in the appeal to the Board. Now, for the first time, and this is new counsel, so I understand that he was not the attorney before the Board and before the IJ, but for the first time, we get new arguments about the admission of those transcripts prior to that hearing. Now, Petitioner's Counsel never asked for a continuance to review those transcripts, and Petitioner's Counsel should have had every access to those transcripts. Opposing counsel makes it seem as though the government was trying to hide the ball here. Not true. Petitioner's Counsel was the one who submitted Petitioner's husband's application into evidence in the first instance, and I want to make clear Petitioner's first hearing before the IJ where her husband's application was mentioned was on September 29, 2008, and actually she knew September 6, 2002, when the Board denied her husband's application, that his application was denied. Okay, so here's my difficulty, and maybe you can help me work my way out of this. We have husband's application and testimony with various issues about how or when they paid the fine, when the IUD was in or out or whatever, and then we have her testimony. My difficulty is it seems that because there was some discrepancy between the two, that that was the foundation for the IJ to say she's not credible, and I don't see why that is. He didn't get affirmative relief either, but I don't see why the fact that her testimony, she who had the IUD, she whose personal health was at issue, why the finding is against her. A few things about that, Your Honor. At the IJ's level, it wasn't only based on the inconsistencies between her and her husband's application. There were some implausibility findings, and about the birth certificate, the age, the 23 age, you might remember that. Those were not adopted by the Board, and so I do want to make clear before the IJ, so you're right, what we had before the Board was just the inconsistencies between their two applications. And that's where I'm having the difficulty. I mean, why don't we say he's not credible, but she is, but they went the opposite. That was not her argument, Your Honor. I don't care what her argument was. There has to be substantial evidence to support the ultimate determination. Well, Your Honor, they gave conflicting accounts on information that would have been equally available to both of them. So, for example, with respect to who picked up the marriage certificate and who paid the fine, and I understand maybe things related to an IUD insertion would have been within her knowledge. She had an obligation to explain why her husband would provide different information with respect to the exact same claim. Husband leased China in 2001. How is she supposed to be in a position to say, well, he differed because of X? I mean, who knows? Sometimes people are clueless about dates and that sort of thing. And I'm just having trouble why, just because he said one thing and she said something different, that the adverse credibility tips against her. Do you have some kind of case that we would look to to help support that proposition where you have two parallel applications? I might add I have the same problem because the IJ never had a chance to assess the husband's credibility in this case, and yet it appears because there was a difference here, what answer could have possibly satisfied the IJ if her husband mistakenly emitted information or he was confused, but that was never assessed? Your Honor, that's because the entire time before the IJ, and even to a large degree before the Board, the position that was taken by Petitioner and her counsel was that they were just minor inconsistencies and that his application supported hers. Not that she should say, well, of course they're different because I'm telling the truth and he wasn't. Those are two different arguments. Well, here's a great one. Her husband testified she stopped going to her IUD checkups after he left China and that she was in hiding from family planning officials. She says, well, that's not true. I went to these IUDs. I was having trouble with it. I got them to take it out. But that is used as an example in here to tip the scales against her. It just seems improbable to me that he's not even in China when all this is going on and she was there. It was her body, her doctor's appointment. I'm just having trouble understanding why the weight should go against her. That's really the difficulty I'm having. It's a very odd transcript. I'm sure you'll agree. It's a very odd procedure. Absolutely, Your Honor. No question about that. What I would say is that it only takes one inconsistency in the Post-Real ID Act, any inconsistency. And it goes to the heart of the matter. It doesn't have to go to the heart. But that is relevant. Right, that's relevant. So what one would you point to? What do you think is the best one? Okay, for example, her husband said that his father went to get their marriage certificate. She says, I went to get the marriage certificate. When confronted with the fact that her husband said something different, she didn't say, oh, well, he wasn't found credible, I'm the one who's credible. She said, oh, well, he probably said that because I was riding on the bike with his father. She tried to reconcile her testimony with his, right, as if it corroborates her story. Well, why wouldn't it corroborate? Because in her mind, she rode on the back of the bike. It was driven by somebody else, but she went. Her husband said that it was only his father that picked up the marriage certificate. Now, that's something a marriage certificate is equally important to both spouses. So unlike the IUD insertion, you would expect. Right, but most of these people don't even have a marriage certificate in a lot of these cases. So this is kind of remarkable that we even have a marriage certificate to talk about. So is it, I was on the back of the bicycle with my father-in-law. He says, the father picked up the certificate. I'm not even sure that that is a conflict in testimony. Well, he said that she had been living with him in Hubei. I apologize for pronunciations. I believe it's Hubei at the time. And so that was why the father went to go get it. And so that's actually inconsistent. If she'd been living with him in Hubei and unable to go to, I believe it's Jiangshan town. I apologize again. If that is his assertion, she wasn't in that town to pick up the marriage certificate. She was in Hubei. Directly conflicting with her story is, I was there to go get my marriage certificate. And then she adds on, when confronted with that inconsistency, oh, I rode with my father-in-law. That doesn't explain why her husband said she wasn't even in that location to pick it up and that neither of them were there to pick up the marriage certificate. It would be one thing if the husband were there testifying, but we have basically just a plain transcript that's being used to impeach in some way. It's just an odd proceeding in that way. And, Your Honor, my opposing counsel tried to make it seem as though her husband could have been allowed the opportunity to come and testify. I would like to point out in the record that first she said that he was not available because he was at a daughter's doctor's appointment. This is 181. And then she said on page 164 he was taking care of the children. She then later said he was absolutely unwilling to come to the immigration court for fear of deportation, and that's on pages 208 and 215. And so what you have here is you have unable and unwilling, for lack of a better set of words, of a witness to come to the court to testify. However, that's not to say, as our brief points out, she could have gotten telephonic testimony, she could have arranged a personal statement. Now, who is in the better position to obtain a statement from her husband, the government who he is avoiding because he doesn't want to be deported, or her as his wife who's been living with him since she entered the U.S. since 2007? You make a good point on that. We'll ask counsel about that. Yes, Your Honor. I mean, the fact of the matter is that in this case, unlike in, and I would like to point out in Saipien and Kuanan, I apologize again for pronunciations, but my opposing counsel tried to make it seem as though she was not given the opportunity to confront these statements. And I want to make very clear that it was her who introduced her husband's application, and I would like to point out that she basically didn't. Didn't the court ask her to obtain it? The court said, is anyone going to submit the husband's application? And what her counsel said was that, yes, yes, actually. He was going to. Yeah, that was the question. He had planned to. And so the immigration judge said, great, well, can you submit it? He said, well, I have to make a copy. Immigration judge said, no problem, we're going to continue this anyway. And it was continued for a year. So he submitted it in, it was in 2009, October 2009. This is on page 82 of the record. And so then when they finally appeared before the IJ on October 27, 2010, page 86, you can see that a whole year went by, and he basically photocopied portions of the husband's application submitted in support of her application. I can give you a bunch of page numbers, 127-29, 163-64, 188, 190, 218, 174, 187, all instances of him taking the husband's application and submitting it as her corroborating evidence, bringing that into play. Your time is up, so you may want to wrap up. Your Honor, as I mentioned at the very beginning, exhaustion and waiver are key because the agency never had the opportunity to weigh in on the claims that are being made now. No continuance was requested, no due process claim was made, the transcript was not objected to, and at this point in the game, counsel cannot reasonably argue that there was error by the agency for an argument not raised. Thank you so much. Thank you. So where's the husband? Why didn't he testify? And isn't that within her control at least to get a statement or a phone call? It is, and I don't want to speculate as to what was the reason why she didn't ask the husband, and I'm sure it was probably because it was. It was a fear of deportation just to be, you know, genuine about this. But regardless, was it necessary? It was necessary because she's testifying, as you've pointed out, she's testifying as to her own accounts of the events. I'd like to point out, Your Honor, that it's not necessary to request a continuance to preserve this right. It is something that is automatically the judge should have considered. Hey, you've had it. It takes a while to get the transcripts. They've had to have had it for a while. Why didn't you present it at the prior hearing, at the October 27 hearing? But no, counsel waited until the last day of the continued trial hearing to present it, knowing that this is going to be the last day. How is the petitioner going to now at this point request for a telephonic appearance, ask for a declaration from the husband when it's the last day of the hearing? Your Honor, the other thing that I'd like to address is that the problem with this transcript is that the IJA relied heavily on it, and she didn't ask enough questions as to, okay, I'm going to have a problem with this transcript and what you're saying. Instead, there's some parts in her decision where she all of a sudden just addresses certain things that weren't addressed during the trial. What relief do you want? What do you want us to do? One is I actually think there's enough here to, you know, and just actually say, you know what, she met her burden. She made a lot of mistakes with regards to her reasoning as to making the adverse credibility finding. If this court says, you know, well, maybe not, maybe we need to address this, then I'm asking the court to remand this case, give her the opportunity to address what the IJA found wrong in this case, and she can go ahead and take a look at it and say, okay, I've given you the opportunity, I'm not satisfied. I think the matter of RKK even – Thank you. I think we have your point in mind that you would like a grant and a remand, and the government would like a denial. I think we have that clearly in mind. I thank you both for your arguments this morning. The case of Lynn v. Sessions is submitted. The next case, United States v. Benevente, has been submitted on the briefs. So we'll next hear argument in United States v. Ada or Ada.
judges: Schroeder, D.W. Nelson, McKeown